# LAW OFFICE OF ALI NAJMI
## 261 Madison Avenue, 12ᵀᴴ Floor
## New York, New York 10016
## (212) 401-6222
## ALI@NAJMILAW.COM

October 9, 2020

Judge Ann Donnelly
US District Court – EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

                          **RE: Defense Sentencing Memorandum**
                                  **United States vs. Maruf Alam**
                                  **Criminal Docket No. 19-CR-342 (AMD)**

Dear Judge Donnelly:

       Our office submits this letter and the accompanying *Pre-Sentencing Memorandum* (*PSM*) on behalf of Mr. Alam. The *PSM* was created in collaboration with the Consulting Project, Inc., and provides a detailed psycho-social and historical analysis of our client. Mr. Alam is deserving of a variance from the Guidelines sentence in this case pursuant to the factors articulated in 18 U.S.C. § 3553(a). A non-custodial sentence with a reasonable term of probation and supervision would be a sufficient sentence to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

       As we shall set forth more fully below, the instant offense is a deviation from Mr. Alam's otherwise law abiding and productive life. Mr. Alam stands before this Court having accepted guilt and responsibility for the charged offense. He stands before this Court ready to provide immediate full payment of the total loss amount of $70,654.94 as restitution or forfeiture. In addition to Mr. Alam's history and

character we ask that the Court also take into account the unique context and circumstances that lead to the occurrence of this offense which will be discussed further below.

## History and Character of Mr. Alam

Mr. Alam has no prior criminal history and has lived a life devoted to community involvement and public service. Mr. Alam was drawn to public service at a very young age of 14 as an intern with the office of Assemblyman Felix Ortiz of Brooklyn (*PSM*, pg. 9). He was drawn to public service from his innate passion to help others, a passion that still burns in him today.

Mr. Alam's career in public service has been remarkable and he stands out among his peers in similar roles. Mr. Alam has served over 2,000 individual residents during his employment with the New York State Assembly on matters ranging from public benefits enrollment, housing issues, senior citizen benefits and disaster relief (*PSM*, pg. 9).

Mr. Alam's devotion to public service is best exemplified by his efforts with Superstorm Sandy relief efforts, in particular his assistance with the residents of Red Hook, Brooklyn. The disaster inflicted by Superstorm Sandy disproportionately affected the residents of the New York City Housing Authority in Red Hook, Brooklyn. Mr. Alam assisted with evacuations, emergency assistance, and obtaining and delivering medications. He worked sixteen (16) hours per day, spearheading a very large team of volunteers who went door-to-door to help community members in need. He also maintained contact with many community members and checked in on them often to offer assistance (*PSM,* pg. 10). Mr. Alam's heroic efforts during

Superstorm Sandy are recalled in a character letter from Ms. Lillie Marshall, the President of the Red Hook West Resident Association which represents NYCHA residents in Red Hook. The letter is included in the *PSM* as Attachment 4. In the letter Ms. Marshall states she and Mr. Alam were together "6-7 days per week walking, knocking on doors to make sure all is well". All of this work was beyond the scope of his duties as an employee of the Assembly and manifested out of his deep desire to help others.

Mr. Alam's commitment and devotion to public service did not end because of his arrest and subsequent departure from the New York State Assembly; he has continued this service in his own individual capacity. During the recent COVID-19 crisis Mr. Alam assisted a local Islamic funeral home in Brooklyn build shelves in air conditioned trailers so that the funeral home could safely and humanely store the large number of bodies which perished during the peak of the pandemic. In a recent phone interview the director of the funeral home stated Mr. Alam is someone who "thinks of the community and not himself" (*PSM*, pg. 14).

The full scope of the community services performed by Mr. Alam are discussed in greater detail in the PSM.

<u>Assemblyman Felix Ortiz</u>

Assemblyman Felix Ortiz has played an outsized role in Mr. Alam's professional and personal life and the relationship between Mr. Alam and Mr. Ortiz is central to this case. An examination of the relationship between Mr. Ortiz and Mr.

Alam is necessary to provide the Court important context on the nature and circumstances of the offense.

Assemblyman Ortiz's campaign and professional apparatus were largely disorganized and he himself is a poor manager who did not encourage compliance with state election laws. Mr. Ortiz entrusted Mr. Alam at the young age of twenty (20) years old to manage his state campaign account and ensure its compliance. However, Mr. Alam never received any actual training for this role and was not qualified to handle this position at such a young age. The conduct at issue in this case goes back to 2012 when Mr. Alam was only 22 years old.

The government has put forth evidence that numerous cash withdrawals were made out of this campaign account by Mr. Alam. Most of the withdrawals made by Mr. Alam were at the direction of Assemblyman Ortiz, who knowingly instructed Mr. Alam in ways which violate state election laws and campaign finance laws. The payment of campaign workers and vendors in cash is prohibited under these laws, however, this was routine practice in Mr. Ortiz's campaign organization. Mr. Ortiz created a campaign culture which did not value compliance and accurate reporting or any book-keeping. The selection of Mr. Alam at such a young age to manage the campaign account and compliance is indicative of the poor management choices of Mr. Ortiz. Why would an elected official ever select someone so young to run the campaign account and be responsible for campaign filings?

Mr. Alam formed a close bond with Mr. Ortiz, a bond so close that it was akin to a father-son bond (*PSM*, pg. 10-11). This bond also created a fear in Mr. Alam of being perceived by Mr. Ortiz as disobedient or failing to perform. It created a bond

4

where Mr. Alam was unable to say "no" to Mr. Ortiz, even if it meant Mr. Ortiz was asking him to violate campaign finance laws (*PSM*, pg. 11).

Mr. Alam's sense of loyalty and devotion to Mr. Ortiz came at substantial cost to himself. He "wore too many hats" and was managing both the government and campaign side of Mr. Ortiz's operation and was constantly overwhelmed and sleep deprived, all of which added to poor decision making on his part (*PSM*, pg. 10). Mr. Alam's own education was sidelined because of his responsibilities with Mr. Ortiz and he failed to complete his own college education due to this (*PSM,* pg. 9).

<u>Sentencing Recommendation</u>

Mr. Alam has re-enrolled in the College of Staten Island since his arrest and he is one semester shy of graduating with a Bachelors Degree (*PSM,* pg. 9). He has a strong support structure through his family. He has learned several important lessons through this experience and appreciates the seriousness of his conduct. He has broken free from his relationship with Assemblyman Ortiz, and has a firmer ability to create boundaries in any professional relationships and say "no" when necessary. The risk of re-offending is very low, and there is no legitimate basis for a custodial sentence such as the Guidelines sentence or a custodial sentence less than the Guidelines sentence. A custodial sentence would disrupt Mr. Alam's progress and derail his plans to finish his college education.

The U.S. Probation Department has also recommended a non-custodial sentence with a term of probation of three (3) years. Mr. Alam has been under court supervision since his arrest in August of 2019. Mr. Alam plead guilty to the instant

5

offense nearly one year ago and has been under the supervision of the government since that time. We request the Court to take into consideration the one year since Mr. Alam's guilty plea which has been free of any violations of the terms of his pre-trial release.  Mr. Alam would be well served by Cognitive Behavioral Therapy as recommended in the *PSM* and would be a useful condition to his term of probation (*PSM,* pg. 18).  We submit to the Court that a term of probation of one (1) year would be a sufficient sentence to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

Sincerely,

ALI NAJMI, ESQ.

261 Madison Avenue, 12th FLOOR
New York, New York 10016
T: (212) 401-6222
M: (718) 637-7707
ali@najmilaw.com