

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RTP:NR/MCM
F. #2019R0933

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 14, 2020

By ECF

Honorable Ann M. Donnelly
United States District Judge
Theodore Roosevelt Federal Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Maruf Alam
                  19-CR-342 (AMD)

Dear Judge Donnelly:

      The government respectfully submits this letter in advance of the sentencing proceedings in the above-referenced matter, currently scheduled for October 19, 2020. For the reasons set forth herein, the government requests that the Court sentence the defendant to a term of incarceration that is sufficient to reflect the serious nature of his criminal conduct and enter the attached proposed order of forfeiture.

Background

      On August 8, 2019, the defendant was arrested pursuant to a complaint charging him with wire fraud and was released the same day on a $100,000 bond. (Presentence Investigation Report ("PSR") at 1). He has remained at liberty since that time.

      The defendant subsequently pleaded guilty before Your Honor on October 23, 2019, to the sole count of an information charging him with engaging in a scheme to defraud the political campaign for which he worked and the contributors thereto, in violation of 18 U.S.C. § 1343. (PSR ¶ 1). The defendant did not plead guilty pursuant to an agreement with the government.

Offense Conduct

      Beginning in or about June 2008, the defendant was employed as a staff member for New York State Assemblyperson Felix Ortiz, ultimately rising to become Ortiz's Chief of Staff. (PSR ¶ 6). In addition, the defendant took responsibility for the finances and

the required New York State Board of Elections ("NYSBOE") disclosures for a campaign committee associated with Ortiz (the "Campaign Committee"). (PSR ¶¶ 7-13).

Although the bank account for the Campaign Committee (the "Campaign Account") was opened in the name of the defendant's mother, the defendant controlled the spending from the Campaign Account. (PSR ¶¶ 13, 23-25). Between January 2012 and January 2019, approximately $80,000 in cash withdrawals were made from the Campaign Account. Additionally, checks totaling $7,500 were written from the Campaign Account to the defendant. (PSR ¶ 20). The defendant personally profited from the scheme. He regularly deposited large sums of cash into his personal bank account (PSR ¶ 21), including multiple instances in which cash deposits made into Alam's personal account closely corresponded to cash withdrawals from the Campaign Account. (See Complaint at ¶ 21).

Neither the cash withdrawals nor the checks to the defendant were disclosed in the Campaign Committee's disclosure filings with the NYSBOE. (PSR ¶ 20). The defendant either failed to file required disclosure reports for the Campaign Committee or filed fraudulent reports that did not disclose the defendant's cash withdrawals from the Campaign Account. (PSR ¶¶ 10-12). Additionally, donors to the Campaign Committee informed law enforcement agents that, had they known that their donations were funding Alam's personal expenditures and were not supporting Assemblyperson Ortiz, they would not have donated to the Campaign Committee. (PSR ¶¶ 26-28). The defendant's multi-year pattern of fraud and deception was a key component to his ability to replenish the Campaign Account and further enrich himself.[1]

The Sentencing Guidelines

The Probation Department identifies the base offense level as 7, with a six-level enhancement for a loss amount exceeding $40,000[2], and an additional two-level enhancement for "abuse of trust." (PSR ¶¶ 33, 34, 36). After a two-level reduction for acceptance of responsibility, the defendant's total offense level is 13. (PSR ¶ 41). As the defendant has a criminal history category of I, the applicable range of incarceration is 12 to 18 months. (PSR ¶ 75).

---

[1] In her interview with the Probation Department, the defendant's mother, who only nominally served as the Treasurer for the Campaign Committee, stated that the defendant had returned any money removed from the Campaign Account as part of the scheme. (PSR ¶51). This statement is not accurate. To date, the government has been provided no documentation of any payments made by the defendant to repay the Campaign Committee for the funds he stole.

[2] The parties are in agreement that the total amount that the defendant stole from the Campaign Committee was $70,654.64.

The government agrees with the Probation Department's estimate of the applicable United States Sentencing Guidelines range.

Analysis

As the Court is well aware, 18 U.S.C. § 3553(a) directs the Court to consider a number of factors when imposing sentencing. Here, two seem particularly applicable: (1) the "nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and (2) the need to "promote respect for the law," 18 U.S.C. § 3553(a)(2). In this case, the government respectfully submits that those factors weigh in favor of the imposition of an incarceratory sentence.

The defendant's conduct was not an aberrant moment of weakness or a minor breach of trust. Instead the defendant, over the course of years, repeatedly abused the trust placed in him by contributors and the Campaign Committee alike, to enrich himself. His conduct was as brazen as it was deceitful – on certain days, he withdrew cash from the Campaign Committee and immediately deposited it into his own account. Funds which the Contributors thought were being used to support a candidate in whom they believed were, instead, being used to line the defendant's pocket.

The defendant's conduct served only to feed the cynicism and distrust that have become the hallmark of the public discourse regarding elected officials. He repeatedly filed false disclosure reports with the NYSBOE, conduct that not only evidenced his intent to hide his crime, but served to undermine the public's faith in our institutions. Political supporters became "marks" to be taken advantage of and public life became a means to Alam's unlawful enrichment. Disclosure obligations became just another guardrail to be subverted or ignored altogether. Public life was converted from a call to serve the greater good to a means to serve a self-serving end.

Here, the Court can send a powerful message of individual and general deterrence and promote respect for the law by sentencing the defendant to a term of incarceration that will make plain that the "business as usual" of bilking contributors and undermining our public institutions has a severe consequence – the loss of one's liberty. Such a punishment is appropriate here.

Restitution & Forfeiture

Restitution in this matter is mandatory in accordance with 18 U.S.C. §§ 3663A and 3664. Here, however, the government believes that determining restitution for the large number of individuals who contributed to the Campaign Committee would be impracticable as contemplated by 18 U.S.C. § 3663A(c)(3)(A). This is due to the fact that NYSBOE records identifying the contributors to Campaign Committee do not reflect identifiers such as dates of birth, social security numbers or even telephone numbers, making it challenging to ensure contact the contributors. Moreover, some contributors were never reported, further complicating the process of identifying them. Finally, as at least some of the Campaign Committee's contributions were used to fund legitimate campaign expenses, which would, as

3

a result, create the need to pro-rated restitution amount for the contributors – a process which would be impracticable, particularly where some donations were as small as $25.00.

The government has successfully identified and provided affidavits of loss to four contributors to the Campaign Committee (the "Contributor Victims").  The Contributor Victims made a total of $2,500 in contributions.  To date, none of the Contributor Victims have submitted affidavits of loss to the Probation Department.

Additionally, the Campaign Committee should not be the recipient of restitution.  As an initial matter, while the defendant's mother has resigned as the Campaign Committee's Treasurer, no replacement has been approved by the NYSBOE.  Staff at the NYSBOE has informed the government that where a committee has no treasurer in place, it is not permitted to collect new funds.  Further, the authorized bank account for the Campaign Committee – the bank account the defendant stole from - has continued to be held in the name of the defendant's mother, meaning that the defendant would, in effect be paying restitution to himself.

Accordingly, absent the receipt of any affidavit of loss from the Contributor Victims, the parties are in agreement that Court should forfeiture, as set forth in the attached proposed order of forfeiture, in the amount of $70,654.64.

Conclusion

For all of the forgoing reasons, the government respectfully submits that the Court should sentence the defendant to a term of incarceration and further that the Court should order the defendant to pay forfeiture in the amount of $70,654.64.

Respectfully submitted,

SETH D. DUCHARME
Acting United States Attorney

By: *Nathan Reilly*
Nathan Reilly
Assistant U.S. Attorney
(718) 254-6196

cc:   Ali Najmi, Esq.
      Clerk of the Court (via ECF)